IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MICHAEL PULLIAM,                              )
                                              )
      Plaintiff,                            )
                                              )
  vs.                                         )    Case No. 08 C 6690
                                              )
AMERICAN EXPRESS TRAVEL RELATED               )
SERVICES CO. INC., TRANS UNION, LLC,          )
BAKER MILLER MARKOFF & KRASNY,                )
LLC, and ZWICKER & ASSOCIATES[1]              )
                                              )
      Defendants.                           )

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Michael Pulliam has filed a *pro se* lawsuit against American Express Travel Related Services Co., alleging violations of the Fair Credit Reporting Act (FCRA) and the Fair Debt Collection Practices Act (FDCPA), as well as common law fraud, breach of contract, and intentional interference with prospective economic advantage. American Express has moved to dismiss Pulliam's claims against it for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

### Background

When considering a motion to dismiss a complaint, the Court accepts the facts stated in the complaint as true and draws reasonable inferences in favor of the plaintiff.

---

[1] Pulliam has voluntarily dismissed his claims against Trans Union, Baker Miller Markoff & Krasny, and Zwicker & Associates pursuant to settlement.

1

*Newell Operating Co. v. Int'l Union of United Auto., Aerospace, and Agr. Implement Workers of Am.*, 538 F.3d 583, 587 (7th Cir. 2008).

The Court takes the following facts from the allegations in Pulliam's fourth amended complaint. American Express offered Pulliam a settlement of one specific account through its attorneys and collection agents Zwicker & Associates and Baker Miller Markoff & Krasny. Pulliam alleges that American Express directed its attorneys and agents to misrepresent the character of the debt and to use deceptive forms, in violation of his rights under the FDCPA. Pulliam agreed to the settlement and submitted payment in accordance with the agreement. He also alleges that American Express misapplied funds from that payment in violation of the agreement.

In 2008, Pulliam discovered that American Express had obtained a judgment against him for a past due balance. He also discovered that American Express had reported three charged-off accounts and a delinquent housing account. Pulliam disputed the charges with American Express, its attorneys, credit reporting agencies, and "various Attorney General Offices." Compl. at 6. Nevertheless, Pulliam alleges, American Express continued to report the false information.

Some time after Pulliam made the settlement payment, American Express accessed his consumer report, allegedly without a permissible purpose.

As a result of these actions, Pulliam alleges, he suffered a diminished credit score, out-of-pocket costs associated with disputing the charges, violation of his privacy, emotional distress, and the loss of business and personal loans.

**Discussion**

Federal Rule of Civil Procedure 8(a) "requires that a complaint contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007) (quoting Fed R. Civ. P. 8(a)). The statement must be sufficient to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Although the plaintiff is not required to give detailed factual allegations, she must allege facts that "raise a right to relief above the speculative level." *Id.*

**A.     FCRA:  reporting inaccurate information**

American Express contends that Pulliam's allegation that it reported inaccurate information to credit reporting agencies does not give rise to a private right of action.

Pulliam's complaint alleges violations of "1681s-2(a)(b)(c)(d); 1681s-2(2); 1681s-2(8)(a)(b)(c)(d)(e)(f)." Compl. at 6. The substance of Pulliam's claim appears to be that American Express inaccurately reported accounts as delinquent to credit reporting agencies and that it continued to do so after he disputed the information with the credit reporting agencies and with American Express itself. These facts, if true, would amount to violations of subparagraphs (a) and (b) of section 1681s-2. 15 U.S.C. §§ 1681s-2(a) & (b).

Subparagraph (a) of section 1681s-2 imposes various duties on furnishers of information (usually creditors), including requirements to report accurate information and correct erroneous information. 15 U.S.C. 1681s-2(a). No private right of action

3

exists for violations of subparagraph (a).  *Id.* § 1681s-2(c); *Perry v. First Nat'l Bank*, 459 F.3d 816, 822 (7th Cir. 2006).  Thus, any claims arising under subparagraph (a) must be dismissed.

A private right of action does exist, however, for violations of subparagraph (b).  *See* 15 U.S.C. §§ 1681n, 1681s-2(c).  Under subparagraph (b), after a consumer disputes the completeness or accuracy of information provided by the furnisher, the furnisher must conduct an investigation and report the results of the investigation to the credit reporting agency.  *Id.* § 1681s-2(b)(1).  If the investigation reveals that the information was inaccurate, the furnisher must report those results to the other credit reporting agencies as well.  *Id.*  These duties are triggered after the furnisher receives notice of the dispute from a credit reporting agency.

Pulliam alleges that he disputed the delinquent accounts with American Express and the credit reporting agencies.  He also alleges that American Express received notice of the dispute from the credit reporting agency.  Despite this, Pulliam alleges, American Express continued to report the false information.  These allegations are sufficient to state a claim for relief under subparagraph (b).

**B.    FCRA:  improper access of consumer report**

Pulliam alleges that after receiving payment pursuant to a settlement agreement, American Express accessed his credit file without his permission and without a permissible purpose, in violation of 15 U.S.C. §§ 1681b and 1681q.[2]

---

[2]Section 1618q provides for criminal liability for obtaining a consumer report under false pretenses.  Some courts had previously interpreted this provision to impose a duty, the violation of which could lead to civil liability pursuant to section 1681n.  *See*

(continued...)

Section 1681b outlines the purposes for which a credit reporting agency may issue a consumer report to a third party. 15 U.S.C. §§ 1681b(a)-(c). Subparagraph (f) prohibits anyone from using or accessing a consumer report for any purpose other than those permissible under section 1681b. *Id.* § 1681b(f). Those permissible purposes include credit transactions involving the consumer, employment purposes, insurance underwriting involving the consumer, and determining the consumer's eligibility for a license. *Id.* § 1681b(a)(3). Third parties may access a consumer report in connection with certain other "legitimate business need[s]," involving either transactions initiated by the consumer or the review of an account to determine whether the consumer is abiding by the terms of the account. *Id.* § 1681b(a)(3)(F).

Pulliam contends that American Express had no permissible purpose for accessing his consumer report after he had submitted payment pursuant to the settlement agreement because the account was closed at that point and he did not authorize American Express to access his report. American Express contends that because Pulliam had an account with American Express at one time, "it had a permissible purpose to review his credit." Mot. at 5. In support of this contention, American Express relies on *Levine v. World Financial Network Nat'l Bank*, 554 F.3d 1314, 1318 (11th Cir. 2009). American Express argues that *Levine* stands for the

---

²(...continued)
*Auriemma v. Montgomery*, 860 F.2d 273 (7th Cir. 1988) (collecting cases). A subsequent amendment to the statute specifically authorizes civil suits against persons who obtain a consumer report without a permissible purpose. 15 U.S.C. §§ 1681b(f) & 1681n(a)(1)(B). *See also Phillips v. Grendahl*, 312 F.3d 357, 364 (8th Cir. 2002).

proposition that "so long as there was, at any point in time, an account relationship . . . there is a permissible purpose under the FCRA." Reply at 4.

American Express's reliance on *Levine* is misplaced. In *Levine*, the Eleventh Circuit considered whether a credit reporting agency's interpretation of section 1681b was objectively unreasonable under *Safeco Ins. Co. of America v. Burr*. *Levine*, 554 F.3d at 1318 (citing *Safeco Ins. Co. of America v. Burr*, 551 U.S. 47 (2007)). In *Safeco*, the Supreme Court held that liability under section 1681n extends to actions known to violate the FCRA and actions stemming from a reckless disregard of statutory duty. *Safeco*, 551 U.S. at 57-58. To prove that a defendant acted with reckless disregard for its statutory duty, a plaintiff must demonstrate that the defendant's reading of the statute was "objectively unreasonable." *Id.* at 69. In *Levine*, the court concluded that the FCRA was unclear with respect to whether the existence of a closed account was a permissible purpose for accessing a consumer report. *Levine* 554 F.3d at 1318-19. As a result, the credit reporting agency's interpretation of the act–specifically, that the act did not prohibit the sale of consumer reports to creditors whose only relationship with the consumer was the existence of a closed account–was not objectively unreasonable. *Id.* at 1319.

American Express does not argue that it interpreted the FCRA as allowing access to consumer reports on consumers whose accounts had been closed. Rather, American Express argues only that a creditor "cannot be held liable for improper access where, as here, the plaintiff currently has <u>or had</u> at one time, an account" with the creditor. Reply at 3 (emphasis in original). In other words, if a consumer ever had an

6

account with a creditor, that creditor has a right under the FCRA, no matter what the circumstances, to access the consumer's report. That is not so. As an initial matter, the statute does not grant creditors the right to access the consumer report of a consumer with a closed account simply by virtue of the fact that the consumer had an open account at some point in time. *See* 15 U.S.C. 1681b. Furthermore, the court in *Levine* did not conclude that the existence of an account at some point in time is a permissible purpose *per se*. Neither did it conclude that the FCRA affirmatively allows creditors to access consumer reports for consumers whose only relationship to the creditor is a closed account. Rather, the court considered only whether a credit reporting agency's interpretation of the FCRA was objectively unreasonable so as to trigger liability for willful noncompliance under section 1681n. That is not the argument that American Express has made in the present case.

Even under American Express's incorrect assessment of *Levine*, Pulliam's claim still would survive, pursuant to 15 U.S.C. § 1681o. The FCRA permits a private action for both willful and negligent violations of the act. A negligent violation entitles a consumer to actual damages, and a willful one entitles the consumer to actual, statutory, and punitive damages. *Safeco*, 551 U.S. at 53 (citing 15 U.S.C. § 1681n & 1681o). In *Levine*, the court did not consider whether the defendant's actions might have constituted a violation under a negligence standard, because the plaintiff had abandoned his claim of negligent noncompliance with the FCRA under section 1681o. *Levine*, 554 F.3d at 1317. Rather, the court considered only whether the plaintiff could prove a willful violation. *Id.* at 1318. Thus, *Levine* provides no guidance with respect to

7

section 1681o. Although Pulliam does not specify which statutory provision he is invoking for this particular claim, the substance of his allegations may be fairly read as alleging both negligent and willful violations of section 1681b.

**C.    FDCPA**

The FDCPA "circumscribes the activities of 'debt collectors,' prohibiting such activities as late night phone calls . . . or false representations about the legal status of a debt." *Whitaker v. Ameritech Corp.*, 129 F.3d 952, 958 (7th Cir. 1997) (citing 15 U.S.C. §§ 1692c(a)(1) & 1692e(2)(A)).  Under the FDCPA, a debt collector includes

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another . . . [T]he term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts.

15 U.S.C. § 1692a(6). "Creditors who collect in their own name and whose principal business is not debt collection, therefore are not subject to the [FDCPA]." *Aubert v. American General Finance, Inc.*, 137 F.3d 976, 978 (7th Cir. 1998). American Express contends that Pulliam's FDCPA claim must be dismissed because, as a creditor, it does not meet the definition of a debt collector under the statute.

Pulliam contends that American Express is liable because it was simply using the name of its attorney to collect its own debt. *Nielsen v. Dickerson*, 307 F.3d 623 (7th Cir. 2002). By this argument, Pulliam invokes what is known as the "false name" exception. *Id.* at 634. If, "in the process of collecting his own debts, [the creditor] uses any name other than his own which would indicate that a third person is collecting or

8

attempting to collect such debts," that creditor will be deemed a debt collector subject to liability under the FDCPA. *Id.* In *Nielsen*, the Seventh Circuit upheld the district court's finding that a creditor's attorney was not "genuinely involved in the effort to collect [the plaintiff's] debts" and that the creditor was therefore subject to liability as a debt collector. *Id.* The court concluded that the attorney's mass mailings to a class of debtors did not constitute meaningful involvement in the collection of the debts because the attorney simply mailed form letters to a list of debtors provided by the defendant. *Id.* at 635-36.

Pulliam fails to allege any set of facts that would support an inference that American Express's attorneys were not meaningfully involved in the collection of his debt. Pulliam contends that American Express directed its attorneys to take action. Perhaps so, but that does not suggest that the attorneys failed to "become professionally involved in [Pulliam's] file." *Id.* (citing *Avila v. Rubin* 84 F.3d 222, 229 (7th Cir. 1996)).

**D. Fraud**

American Express contends that Pulliam has failed to plead his fraud claims with particularity as required by Federal Rule of Civil Procedure 9(b). "In order to survive dismissal on a Rule 12(b)(6) motion, the complaint must plead the who, what, when, and where of the alleged fraud." *Lachmund v. ADM Investor Servs., Inc.*, 191 F.3d 777, 782 (7th Cir. 1999) (internal quotation marks and citations omitted).

Pulliam alleges that American Express "forwarded or directed the forwarding of documentation . . . which misrepresented how [his] funds were to be applied toward an

alleged outstanding debt." Compl. at 6. He fails to allege, however, what he contends that documentation stated. Pulliam alleges that American Express offered him a settlement, but he does not allege the particular terms of the settlement, such as the settlement amount or American Express's obligation under the settlement. As a result, Pulliam's complaint fails to allege fraud with the particularity required by Rule 9(b).

**E.     Breach of contract**

American Express contends that Pulliam's breach of contract claim must be dismissed because he has not alleged the essential elements of a contract, including consideration, definitive terms of the contract, performance, and breach by American Express. Under Illinois law, the application of which neither party disputes, "[t]he elements of a contract cause of action are: (1) offer and acceptance, (2) consideration, (3) definite and certain terms, (4) performance by the plaintiff of all required conditions, (5) breach, and (6) damages." *MC Baldwin Financial Co. v. DiMaggio, Rosario & Veraja, LLC*, 364 Ill. App. 3d 6, 13, 845 N.E.2d 22, 30 (2006) (citation omitted).

Pulliam alleges that he and American Express "agreed to a settlement agreement for one account," American Express then applied his funds–contrary to the agreement–toward multiple accounts, and he was damaged as a result. Compl. at 8. He does not allege any of the particular terms of the settlement agreement, such as the settlement amount or either party's obligations under the agreement. Although Pulliam attached a copy of the letter with the purported settlement offer to another filing, he did not attach it to any of his complaints. As a result, the Court cannot consider it. *Albany Bank & Trust Co. V. Exxon Mobil Corp.* 310 F.3d 969, 971 (7th Cir. 2002) (citing Fed. R.

10

Civ. P. 12(b)). In short, as currently alleged, Pulliam's breach of contract claim fails to state a claim.

F.     **Intentional interference with prospective economic advantage**

American Express contends that Pulliam's intentional interference claim must be dismissed because he has failed to allege a reasonable expectancy beyond his own wish or hope. To state a claim for intentional interference with prospective economic advantage, the complaint must allege that the plaintiff had a reasonable expectation of entering into a valid business relationship, the defendant knew about it, the defendant purposely interfered to prevent the fulfillment of the expectancy, and the plaintiff was damaged as a result. *Cook v. Winfrey*, 141 F.3d 322, 327 (7th Cir. 1998) (citing *Delloma v. Consolidation Coal Co.*, 996 F.2d 168, 170-71 (7th Cir. 1993)). Mere hopes of an economic advantage are insufficient to support a claim of intentional interference. *Cavaliery-Conway v. L. Butterman & Assocs.*, 992 F. Supp. 995, 1012 (N.D. Ill. 1998). "In addition, it has been long held that the defendant's interference must be directed toward a third party." *Douglas Theater Corp. v. Chicago Title & Trust Co.*, 266 Ill. App. 3d 1037, 1047, 641 N.E.2d 584, 590 (1994).

Pulliam alleges that he had a reasonable expectancy of acquiring a loan because of his "business background." He fails to allege the type of loan or loans for which he applied and whether he otherwise met the criteria to obtain the loans. He also fails to allege whether American Express's actions were directed at the lenders, as opposed to Pulliam himself. In his response, Pulliam contends that the details of his business background will emerge during discovery and that his complaint is sufficient.

The Court disagrees. Pulliam has failed to allege anything beyond his own opinion that his business background, whatever that may be, assured him success on his loan applications. Even if true, his opinion is insufficient to support a reasonable expectancy.

## Conclusion

For the foregoing reasons, the Court grants American Express's motion to dismiss [docket no. 46] with respect to Pulliam's FDCPA, fraud, breach of contract, and intentional interference with prospective economic advantage claims, as well as his FCRA claim based on 15 U.S.C. §1681s-2(a). The Court denies the motion with respect to his FCRA claims based on 15 U.S.C. § 1681s-2(b) and improper access under 15 U.S.C. § 1681b. Because certain of the deficiencies the Court has identified are potentially curable, the Court gives Pulliam leave to file an amended complaint on or before June 19, 2009. The case is set for a status hearing on June 24, 2009 at 9:30 a.m.

                                                    _____
                                                    MATTHEW F. KENNELLY
                                                    United States District Judge

Date: June 4, 2009