

## UNITED STATES DISTRICT COURT
## NORHTERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MICHAEL PULLIAM, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>AMERICAN EXPRESS )<br>TRAVEL RELATED SERVICES CO INC )<br>208 SOUTH LASALLE ST, SUITE 814 )<br>CHICAGO, ILLINOIS 60604 )<br>AND )<br>TRANS UNION, LLC )<br>33 NORTH LASALLE STREET )<br>CHICAGO, ILLINOIS 60602 )<br>AND )<br>BAKER, MILLER, MARKOFF & )<br>KRASNY, LLC )<br>29 N. WACKER 5TH FLOOR )<br>CHICAGO, ILLINOIS 60606 )<br>AND )<br>ZWICKER & ASSOCIATES )<br>800 FEDERAL STREET )<br>ANDOVER, MASSACHUSSETS )<br>01810-1041 ) | Civil Action No. 08 CV6690<br><br><br>KENNELLY<br><br>**F I L E D**<br><br>AUG 1 2 2009  EA<br>Aug 12. 2009<br>MICHAEL W. DOBBINS<br>CLERK, U.S. DISTRICT COURT |

### 5th AMENDED CORRECTED COMPLAINT — 2nd Version

I.  Preliminary Statement

1. This is an action for damages brought by an individual consumer against the Defendants for multiple violations of the Fair Credit Reporting Act (hereafter the "FCRA"). 15 U.S.C 1681 et seq., as amended, violations of the Fair Debt Collection Practices Act (hereafter the "FDCPA"), 15 U.S.C. 1692. Defendants defamed the Plaintiff's character and intentionally interfered with the prospective economic advantage of the Plaintiff, committed Fraud, and also breeched a contract in regard to the settlement of an account and the collection of funds from the Plaintiff's financial resources.

II.  Jurisdiction and Venue

2. Jurisdiction of this Court arises under 15 U.S.C. 1681p, 28 U.S.C. 1331 1337. Venue lies properly in this district pursuant to 28 U.S.C. 1391(b).

III. Parties

3. Plaintiff, Michael Pulliam, is an adult individual and citizen of the State of Illinois.
4. Trans Union, LLC, is a business entity that regularly conducts business throughout every state and country in the United States and as a corporation that does business in the State of Illinois, is a citizen of the State of Illinois.
5. Defendant, American Express Travel Related Services Co. Inc. (AMEX), is a business entity that regularly conducts business in all states and counties in the United States, and as a corporation whose principal place of business is located in the State of Texas
6. Zwicker & Associates., is a business entity that regularly conducts business in the United States and whose principal place of business is in the State of Massachusetts. Furthermore, at all relevant times herein, Zwicker acted as an agent and at other times an attorney of American Express and also represented themselves as collecting a debt and as debt collector within the meaning of 15 U.S.C. 1692(a)(6) in that it held itself out to be a company collecting a debt claimed to be owed to AMEX.
7. Baker & Miller., is a business entity that regularly conducts business in the United States and is a corporation whose principal place of business is in the State of Illinois and is a partner of Zwicker & Associates. Furthermore, at all relevant times herein, Baker & Miller acted as an agent of American Express representing themselves as a debt collector within the meaning of 15 U.S.C. 1692(a)(6) in that it held itself out to be a company collecting a debt claimed to be owed to American Express.

IV. Allegations

8. AMEX has been reporting and causing the reporting of derogatory and inaccurate statements and information relating to Plaintiff and Plaintiff's credit history to credit reporting agencies and third parties (hereafter the "inaccurate information").

9. The inaccurate information of which Plaintiff complains is an account, or trade-line, named American Express.

10. AMEX disseminated information to credit reporting agencies and third parties that the information that the account(s) were accurately reported as belonging and settled by Plaintiff.

11. AMEX disseminated information to credit reporting agencies that a Judgment exists against the Plaintiff for the account(s).

12. The inaccurate information negatively reflects upon Plaintiff, Plaintiff's credit repayment history, Plaintiff's financial responsibility as a debtor and Plaintiff's credit worthiness.

13. The information AMEX provided to credit reporting agencies and other second and third parties have been and continue to be disseminated to various persons and credit grantors, both known and unknown.

14. Plaintiff disputed the inaccurate information with AMEX and credit reporting agencies by written communication to its representatives and by following AMEX's and the credit reporting agencies established procedure for disputing consumer credit information. Further, Plaintiff enclosed in his written dispute documents that either proved to AMEX and the credit reporting agencies that its information was inaccurate or provided it with evidence that was supportive of Plaintiff's contentions. AMEX, nevertheless, instructed the credit reporting agencies to continue to report the inaccurate information or the information in dispute by Plaintiff.

15. AMEX received Plaintiff's disputes from the credit reporting agencies and the Attorney General of Texas and Illinois in regard to this matter.

16. Notwithstanding Plaintiff's efforts, AMEX sent Plaintiff correspondence indicating its intent to continue publishing the inaccurate information and AMEX continued to publish and/or direct the publishing and dissemination of inaccurate information to other third parties, persons, credit reporting agencies, entities and credit grantors defaming and slandering the Plaintiff.

17. Despite receipt of the documentation, AMEX instructed the credit reporting agencies to continue to report the inaccurate information and refused to continue the investigation.

18. Despite Plaintiff's efforts to date, AMEX has nonetheless deliberately, willfully, intentionally, recklessly and negligently repeatedly failed to remove or instruct or ensure the removal of the inaccurate information about Plaintiff from the credit reports within the scope of time as outlined by the law.

19. Plaintiff forwarded court documents, letters from American Express and other documentation showing the inaccuracies.

20. AMEX intentionally interfered with Plaintiff's prospective economic advantage.

21. At all times pertinent hereto, AMEX was acting by and through its agents, servants and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of AMEX herein.

22. At all times pertinent hereto, the conduct of AMEX, as well as that of its agents, servants and/or employees, was malicious, intentional, willful, reckless, and in grossly negligent disregard for federal and state laws and the rights of Plaintiff.

23. At all times pertinent hereto, AMEX was a "person" and providing information to "consumer reporting agencies" as defined by 15 U.S.C. 1681(a)(b) and (f) and as a creditor.

24. At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. 1681(a)(c).

25. At all times pertinent hereto, the abovementioned credit reports were "consumer reports" as that term is defined by 15 U.S.C. 1681(a)(d).

26. Pursuant to 15 U.S.C 1681(n) and 15 U.S.C. 1681(o), AMEX is liable to Plaintiff for engaging in the following conduct or causing the following conduct through its actions and or inactions:

   A. Willfully and negligently failing to conduct a proper and reasonable investigation and reinvestigation concerning the inaccurate information after receiving notice of the dispute from the Plaintiff, in violation of 15 U.S.C. 1681(i), and other sections of 1681;

   B. Willfully and negligently failing to provide all relevant information provided by Plaintiff regarding the dispute of the inaccurate information to the furnishing entities, in violation of 15 U.S.C. 1681(i);

   C. Willfully and negligently failing to review and consider all relevant information submitted by Plaintiff concerning the dispute of the inaccurate information, in violation of 15 U.S.C. 1681(i);

   D. Willfully and negligently failing to delete the inaccurate information from Plaintiff's credit file after reinvestigation, in violation of 1681(i); & 1681s-2(8) and other sections of 1681.

   E. Willfully and negligently failing to note Plaintiff's dispute of the inaccurate information and in subsequent consumer reports, in violation of 1681(i)(c);

   F. Failure to provide the name and address of the person verifying the information as requested by Plaintiff;

   G. Willfully and negligently failing to employ and follow reasonable procedures to assure maximum possible accuracy of Plaintiff's credit report, information and file, in violation of 15 U.S.C. 1681(e)(b)(h)(j).

27. Plaintiff has been damaged, and continues to be damaged, in the following ways:

    A. Out of pocket expenses associated with disputing the information only to find the information remaining on his credit reports;

    B. Decreased credit score which may result in inability to obtain credit on future attempts;

    C. Denied loan(s) based inaccurate information;

    D. Diminished prospective economic advantage;

    E. Defamation of character;

    F. Emotional distress and mental anguish associated with having incorrect derogatory personal information transmitted about Plaintiff to other people both known and unknown.

28. The conduct of AMEX were a direct and proximate cause, as well as a substantial factor, in bringing about the injuries, damages and harm to Plaintiff that are outlined above and, as a result, AMEX is liable to Plaintiff for the full amount of statutory, actual and punitive damages, along with the costs of litigation, as well as such further relief as may be permitted by law.

## COUNT 1 VIOLATIONS OF FCRA V. AMEX

1. Plaintiff re-alleges and incorporates paragraphs 1-28 as set forth herein.

2. AMEX its employees and/or agents submitted to the Plaintiff settlement documents relating to one (1) account and offered the Plaintiff a settlement of the one (1) account.

3. Specifically, Plaintiff asserts that the account is an account that the AMEX's, it's employees and or agents and/or attorney Zwicker & Associates & Baker & Miller contacted, negotiated and collected funds from the Plaintiff by providing deceptive forms and documentation.

4. The Plaintiff agreed to a settlement for one account as offered by the AMEX, it's employees and/or agents and/or attorneys.

5. During 2008, Plaintiff discovered a judgment for a past due balance with American Express.

6. During 2008, Plaintiff discovered three collection or charged off accounts which the AMEX, its employees and/or agents and/or attorneys had published or directed to be published to third parties both known and unknown.

7. During 2008, Plaintiff discovered a delinquent housing account which the AMEX, AMEX's employees, AMEX's agents and/or AMEX's attorneys had published or directed to have published to third parties both known and unknown.

8. Plaintiff complained to the AMEX, AMEX's employees, AMEX's agents, AMEX's attorneys, credit reporting agencies, and various Attorney General Offices.

9. Plaintiff complained to the AMEX concerning the inaccuracies.

10. AMEX, its employees, AMEX's agents and/or attorneys has also violated 1681s-2(b)(c)(d); 1681s-2(2); 1681s-2(8)(a)(b)(c)(d)(e)(f);

11. Several times during 2008, the Plaintiff disputed the account which was still reporting on his credit file with AMEX, its agents or employees, various consumer protection officials, and the credit reporting agencies. Furthermore, in his dispute, Plaintiff provided the AMEX, its agents or employees, various consumer protection officials, and the credit reporting agencies with court documents and letters of reference to and from the AMEX and AMEX's agents or employees showing that the account settled was referenced as one account on the settlement agreement proffered by American Express and/or its agents or employees.

12. Despite receipt of documentation, the AMEX, its agents or employees continued to report and/or direct the reporting and publishing of inaccurate information.

13. AMEX received notice of the disputes from the credit reporting agencies.

14. AMEX actions were willful, reckless & malicious in regard to this matter.

15. A result of AMEX, its employees and agent's violations as aforesaid, Plaintiff suffered and continues to suffer personal humiliation, embarrassment, defamation of character, and emotional distress and a diminished credit score.

### COUNT 2 FRAUD vs AMEX

AMEX and/or AMEX's agent(s) forwarded or directed the forwarding of settlement documentation to the Plaintiff which misrepresented how the Plaintiff funds were to be applied toward an alleged outstanding debt. AMEX or its agents, deducted funds from Plaintiff's bank account(s) and directed those funds in an unauthorized manner toward the payment of unauthorized account(s).

1. AMEX offered Plaintiff a settlement for one account associated with one account number ending in #46008.
2. AMEX was the maker or co-maker of the agreement with Zwicker.

6

3. AMEX offered the settlement via phone during 2006 from the offices of Zwicker & Associates;
4. AMEX, through its agent or employee Jason Houle offered the settlement via regular mail April 27, 2006 to Plaintiff's mailing address as outlined in Attachment A;
5. AMEX's agreement required Plaintiff to make four payments in the amount of $3,625 for at total of $14,500 to settle one account ending in #46008 for settlement in full to the offices of Zwicker & Associates in Massachusetts;
6. AMEX was obligated to settle one account;
7. AMEX was obligated to report the account as paid in full per the payments by Plaintiff;
8. AMEX or its agents misrepresented the intent and direction of the funds used from the settlement agreement by directing those funds toward the payment and reporting of multiple accounts and account numbers as outlined in the settlement agreement;
9. AMEX directed funds to settle a manufactured housing account;
10. Plaintiff did not authorize the payment toward or reporting of a manufactured housing account.

11. Plaintiff did not agree to the payment of multiple accounts or the reporting of multiple account numbers.
12. After negotiation of initial settlement agreement, AMEX authorized or directed a second agent or attorney to contact Plaintiff and attempt to collect funds in excess of the settlement agreement.
13. AMEX benefited from the misrepresentation.
14. AMEX had knowledge of the misrepresentation.
15. AMEX was made aware of the misrepresentation from the Plaintiff.
16. AMEX's actions were malicious, willful, and intentional.

Plaintiff has been damaged in the following ways:

1. Diminished credit score;
2. Out of pocket cost(s) for continuous disputes of inaccurate information;
3. Emotional distress and confusion in dealing with the misrepresentations;
4. Harassment due to collection attempts by AMEX beyond the scope of the settlement agreement;

## COUNT 3 ACCESSING CREDIT FILE WITHOUT A PERMISSIBLE PURPOSE VS vs AMEX

AMEX accessed the Plaintiff credit file without a permissible purpose as outlined by FCRA section 1681(q)(b) on several occasions. AMEX did not receive an application for credit from the Plaintiff during this timeframe nor did AMEX have cause to access Plaintiff's credit file or personal information.

1. Plaintiff and AMEX agreed to a settlement of one account.
2. AMEX accessed the Plaintiff's credit file without a permissible purpose after all payments were made in connection with the settled accounts.
3. AMEX violated the FCRA 1681(b)(q).
4. AMEX violated the Plaintiff's privacy by accessing his credit file without a permissible purpose on multiple occasions
5. AMEX was aware that Plaintiff did not authorize the access of his credit file.

Plaintiff has been damaged in the following ways:

1. Diminished credit score;
2. Out of pocket cost(s) for continuous disputes of inaccurate information;
3. Violation of Privacy;

## COUNT 4 BREECH OF CONTRACT VS AMEX

AMEX and/or its agents contacted and offered Plaintiff a settlement agreement for one account and one corresponding account number. AMEX authorized and accepted Plaintiff's funds and applied Plaintiff's funds in conflict with the settlement agreement offered to Plaintiff which is attached as Exhibit A.

1. Plaintiff and AMEX agreed to a settlement agreement for one account.
2. AMEX was the author or co-author of the agreement with Zwicker.
3. Jason Houle an agent or attorney of AMEX offered Plaintiff a settlement of one account from the offices of Zwicker & Associates via phone and regular mail.
4. The settlement agreement required the Plaintiff make four payments in the amount of $3,625 totaling $14,500 to settle in full one account ending in #46008.
5. Plaintiff accepted the offer or contract verbally and by making the required payments via electronic payment and check or money orders.
6. AMEX's offer to settle the account was to release Plaintiff from further liability on one specific account.
7. AMEX reported or held Plaintiff liable for several accounts including the account in the settlement agreement.
8. AMEX authorized or applied the funds toward the settlement of multiple accounts.
9. Plaintiff was initially unaware of the multiple reporting and the misdirection of funds in conflict with the agreement.
10. AMEX had knowledge that the settlement agreement was for one account.
11. AMEX had knowledge that the application of Plaintiff's funds were outside of the scope of the settlement agreement.
12. Plaintiff fulfilled and/or performed all required conditions required by the contract as offered by AMEX and/or its agents via phone and in writing.
13. AMEX was notified by Plaintiff, credit reporting agencies and state officials of the conflict.
14. AMEX's actions were malicious, intentional, reckless, and willful.
15. AMEX benefited from the breach of contract.

Plaintiff has been damaged in the following ways:

1. Diminished credit score;
2. Out of pocket cost(s) for continuous disputes of inaccurate information;
3. Embarrassment by third parties being notified that multiple account were partially settled or paid;
4. Denied loans and credit due to the misrepresentations reported by AMEX;
5. Emotional distress and confusion in dealing with the misrepresentations;

## COUNT 5 VIOLATION OF THE FDCPA VS AMEX

Plaintiff contends that an attorney meaningfully involved would not have forwarded several demand letters to Plaintiff in conflict with a previous settlement agreement and in conflict with the amount of settlement agreement (Exhibit B). AMEX directed multiple attorneys from multiple law offices to forward documents and obtain judgments against Plaintiff via voluminous methods many of the efforts in conflict with one another. Furthermore, Plaintiff has been informed by previous co-defendant(s) that co-defendants were not meaningfully involved with collection efforts.

In its attempt to collect the aforementioned debt, the AMEX violated the Fair Debt Collections Practices Act, 15 U.S.C. 1692 by directing its agent(s) or employees to violate the Plaintiff's rights under the FDCPA in the following manner:

a. AMEX falsely represented the character, amount, number and/or legal status of the debt in violation of 15 U.S.C. 1692e(2)(a); and

b. AMEX's utilized several attorneys to mail the Plaintiff several letters in conflict with the amount owed;

c. After negotiation of initial settlement agreement, AMEX authorized or directed a second agent or attorney to contact Plaintiff and attempt to collect funds in excess of the settlement agreement;

d. AMEX's employees, attorneys, or collection agents simultaneously contacted Plaintiff per the direction of AMEX in conflict with pending settlement agreements and payments.

e. AMEX communicated or threatened to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a debt was disputed in violation of 15 U.S.C. 1692e(8).

f. AMEX directed the forwarded and/or directed that deceptive forms be forwarded to the Plaintiff in violation of 15 U.S.C. 1692(h)(j)(k)

g. AMEX reported the inaccurate information to credit reporting agencies based on the deceptive forms;

Plaintiff has been damaged in the following ways:
    1. Denial of personal loans;
    2. Denial of business loans;
    3. Diminished credit score;
    4. Out of pocket cost(s) for continuous disputes of inaccurate information

5. Harassment by demands of funds outside of the scope of the original settlement agreement.

## **COUNT 6 INTENTIONAL INFERERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE VS AMEX**

During the timeframe of the inaccuracies, Plaintiff applied for mortgage loans to structure and re-structure real estate portfolio(s) which was under Plaintiff's control and discretion. Lenders relied on information reported by or directed to be reported by AMEX in their decision to deny Plaintiff the aforementioned loan(s). Plaintiff has over a decade long business and personal relationship with the lenders that denied loans or credit. Plaintiff otherwise met criteria for loans as he had the experience required in managing & developing real estate and substantial equity in underlying real estate portfolio.

1. Plaintiff re-alleges and incorporates paragraphs 7-28 as set forth herein;
2. Plaintiff has a business background in Financial Derivatives and investing;
3. Plaintiff manages real estate portfolio(s) valued over several million dollars;
4. Plaintiff has a personal and business relationship of 10 years with several lenders who had provided lending to plaintiff for the structuring and restructuring of the portfolio(s);
5. Plaintiff applied for 1st, bridge, and rehabilitation loans with the previously mentioned lenders;
6. AMEX reported Plaintiff defaulted on housing loan(s);
7. AMEX was aware of Plaintiff business and personal background.
8. AMEX was aware that Plaintiff was applying for loan(s);
9. AMEX's actions and interference were directed at third parties who accessed credit reports;
10. AMEX's actions and interference were directed at the lenders;
11. AMEX purposefully interfered to prevent the fulfillment of the expectancy of obtaining the loan(s);
12. AMEX continued to publish inaccurate information after being notified of the inaccuracies;
13. AMEX published and made defamatory statements about the Plaintiff.
14. AMEX's actions were malicious, willful, and intentional in regard to this matter;
15. Plaintiff applied for business and personal loans during the timeframe of the misreporting;
16. Plaintiff's business background gave Plaintiff a reasonable expectancy of being granted both business and personal loans during the timeframe of the inaccuracies;
17. Plaintiff was denied a loan based on the information.

Plaintiff has been damaged in the following ways:
1. Denial of personal loans;
2. Denial of business loans;

3. Diminished credit score;
4. Out of pocket cost(s) for continuous disputes of inaccurate information

## JURY TRIAL DEMAND

13. Plaintiff demands trial by jury on all issues so trialable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Michael Pulliam, seeks judgment in Plaintiff's favor and damages against Defendants, based on the following requested relief:

a. Actual Damages
b. Statutory Damages;
c. Punitive Damages;
d. Costs and legal fees;
e. A refund of all monies paid based on the deceptive settlement letter(s);
f. An order directing the Defendant immediately delete all of the AMEX accounts from Plaintiff's credit files and cease reporting the inaccurate information to any and all persons and entities to whom they report consumer credit information;
g. An order directing that Defendant send to all persons and entities to whom they have reported Plaintiff's inaccurate information as outlined by the FCRA within the last three years;
h. An order directing AMEX and its agents to remove all inquires listed on Plaintiff's credit reports after the time Plaintiff fulfilled settlement agreement; and
i. Such other relief as may be necessary, just and proper.

Respectfully,

Michael Pulliam

Michael Pulliam
3473 S. King Drive #501
Chicago, Illinois 60616
312-305-3215

# ZWICKER & ASSOCIATES P.C.

ATTORNEYS AT LAW
800 FEDERAL STREET
ANDOVER, MASSACHUSETTS 01810-1041
Tel. (800) 370-2251 / (978) 686-2255
Fax (978) 686-3538

Paul W. Zwicker
*MA Bar*

Robert W. Thuotte
*MA Bar*

Amy Edith Britt
*CA Bar*

Emahn Counts
*CA Bar*

Andrew J. Dick
*NY & FL Bars*

Barbara A. Carnevale
*MA Bar*

Mireille H. Vartanian
*MA Bar*

Alina Gorodetsky
*MA Bar*

Ron Z. Opher*
*NJ & PA Bars*

Dwight Baylor
*AZ & VA Bars*

Debra Dawn
*FL, NC, NY & TX Bars*

Mitchell A. Meyers*
*NC Bar*

Randall Pratt*
*ME & NH Bars*

Robert G. Markoff*
*IL Bar*

Temple B. Ingram, Jr.
*TX & NM Bars*

Irvin Borenstein
*CO & NY Bars*

Sanford J. Pollack
*NE & MO Bars*

Shannon M. Pawley
*MI Bar*

Jeffrey M. Wilson*
*ID Bar*

Jessica Ellicott*
*VT Bar*

\* *Of Counsel*

April 27, 2006

Michael Pulliam
8827 South Dorchester Avenue #2
Chicago, IL 60619

RE: American Express
PULLIAM, MICHAEL[1]
Account No. 3728-885438-46008

Dear Mr. Pulliam:

This letter will confirm that our client, American Express, has agreed to accept $14,500.00 as settlement in full of the above-referenced account. This settlement is conditioned upon receipt by this office of a check in the amount of $3,625.00 on or before May 25, 2006 and a check in the amount of $3,625.00 on or before June 25, 2006 and a check in the amount of $3,625.00 on or before July 25, 2006 and a check in the amount of $3,625.00 on or before August 20, 2006.

American Express has requested that we advise you of the following;

By accepting this amount American Express releases Michael Pulliam from further liability on these specific accounts only. No attempts will be made to collect the remaining balance. However, it should be noted that the account will continue to reflect the remaining balance which would need to be paid before American Express processes any future applications that you may choose submit for American Express accounts or that an employer may submit on your behalf for an American Express Corporate Card. Notwithstanding the foregoing, future applications may still be declined based on the credit criteria in place at the time the application is submitted.

Upon timely receipt of said payment and the successful negotiation thereof, this office shall advise our client that the account is settled in full. Thereafter, in due course, our client will notify the appropriate credit reporting agencies of the account's settled status.

If the payment of the settlement amount is not made on or before the date stated above, acceptance of your settlement offer is withdrawn.

Sincerely,

Jason Houle
Director of Bank Cards

JH/sc/547/JM

---

[1] This correspondence is from a debt collector. As such this correspondence is an attempt to collect a debt and any information obtained will be used for that purpose.